Daniel J. HAYES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Nov. 24, 1981.

Rehearing Denied Jan. 12, 1982.

Frank W. Heft, Jr., Chief Appellate Defender, Daniel T. Goyette, Chief Deputy Defender, Bruce P. Hackett, Asst. Dist. Defender, Jefferson Dist. Public Defender, Louisville, for appellant.

Steven L. Beshear, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

## OPINION OF THE COURT

Appellant was found guilty of the murder of Victor White and sentenced to life imprisonment.

The police investigation did not center on appellant until several months after the shooting death occurred. Although he first denied knowing the victim, appellant confessed to the killing when confronted with the murder weapon. He then gave the police a statement detailing the homicide.

Appellant presents four issues on appeal. The first two can be considered jointly and may be stated as follows:

1. Did the jury instruction allowing appellant to be found guilty of murder under alternative theories of either intent or wantonness deny him his right to a unanimous verdict under Section 7 of the Kentucky Constitution?

The instruction submitted to the jurors was worded so as to allow them to find appellant guilty of murder if they believed beyond a reasonable doubt that appellant shot Victor White with a pistol and

(b) That in so doing:

(i) He caused Victor White's death intentionally . . .

or

(ii) He was wantonly engaging in conduct which created a grave risk of death. . . .

■ The question is: was there any proof upon which the jury could have made a determination that appellant was acting wantonly? If not, then consistent with our opinion in *Boulder v. Commonwealth*, Ky., 610 S.W.2d 615 (1980), the appellant was denied a unanimous verdict. Therein we said that there is no unanimity if the state of the evidence is such that it would be clearly unreasonable for a juror to believe that the defendant's conduct was other than intentional, because it could not be ascertained that the jurors based their decision only on the theory supported by the evidence. To the contrary, an alternative type instruction is proper and nonviolative of the unanimity requirement of Section 7 of the Kentucky Constitution if either theory in the instruction is reasonably supported by the evidence. See *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 (1978).

■ The evidence herein does not allow an inference that the shooting was anything but intentional. There were no wit-

nesses to the crime. The only details of the shooting came from appellant's statement.

The pertinent portion of the statement reads as follows:

Just before the death of Victor White he and his family moved next door to me and my mother. They had not lived there very long before I shot him. The reason I had to shoot Victor was because he would often talk to me through his secret powers and so would his sister. Their voices would cuss me and make threats to me. These people would project their images to me and smile at me and make fun of me and let me know that they were going to hurt me. I had bought a gun from Davis Pawn Shop on Market Street some time before I shot Victor and the reason I bought this gun was to protect myself. I used the gun to shoot Victor with and I was later arrested with the same gun and it was taken from me.

The night of the shooting it was after dark[.] I was at home laying [sic] down when the sperit [sic] came to me and made me light in the knee's [sic], making me get up. I got up and went outside walking down Clay Street. I saw Victor coming up Madison Street and the voices started again. The voices started to stimulate me and they threw their field on me which makes me real weak. I think Victor's voice was also coming to me, but I don't know what he was saying. Victor was running towards me and when he was about thirty feet away I started to shoot at him. I shot several times I think but I don't recall how many times. I then turned back around and ran back into the projects where I walked around for a while before I went home.

I have never told anyone about the shooting before but the people next door know I did it because the threats have kept on coming about twenty four hours a day. Victor's mother and sister still project their threats at me. The reason I killed Victor was because I was out of control and their images made me do it.

Appellant clearly shot at White, intending to stop him. There was no physical evidence of random shooting at the scene. It would be clearly unreasonable for the jury to believe that appellant's conduct was other than intentional. *See Boulder, supra.* Accordingly, we conclude that the murder instruction was improper and reverse for a new trial.

Because they address the sufficiency of the Commonwealth's evidence, it is necessary that we briefly address the remaining two issues raised by appellant.

2. Was the evidence of extreme emotional disturbance of such probative force that a verdict of acquittal should have been granted on the murder charge?

KRS 507.020 defines murder as death caused by intentional or wanton conduct in the absence of extreme emotional disturbance. KRS 500.070 says that:

(1) The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt, except as provided in subsection (3). This provision, however, does not require disproof of any element that is entitled a "defense," as that term is used in this code, unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal.

The evidence adduced does strongly indicate that appellant has been the victim of chronic mental illness. His expert witness, Dr. Pran Ravani testified that appellant suffers from paranoid schizophrenia.

In *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 109 (1980), we discussed this issue of emotional disturbance and the proof requirements relating thereto.

Assuming, however, that a mental disorder, whether or not it amounts to legal insanity, may constitute a reasonable "explanation or excuse" for extreme emotional disturbance, it was incumbent upon the trial court to require the negating of that factor in its instruction on murder, which was done. That is not to say that once the issue is raised (by evidence suffi-

cient to ground a reasonable doubt) the Commonwealth must meet it with countervailing evidence. Unless the evidence raising the issue is such probative force that otherwise the defendant would be entitled to an acquittal on the higher charge (murder), the prosecution is not required to come forth with negating evidence in order to sustain its burden of proof. Cf. *Brown v. Commonwealth*, Ky., 555 S.W.2d 252, 257, fn. 6 (1977). Otherwise it would never be possible to convict a defendant of murder if there were no eyewitnesses and if, for example, he testifies that he acted in self defense, or was acting under the influence of extreme emotional disturbance.

The Commonwealth did all that it was required to do. A review of the record convinces us that the evidence of emotional disturbance was not so substantial as to mandate a directed verdict of acquittal. The cross examination of Dr. Ravani sufficiently raised a factual issue as to whether appellant was schizophrenic or perhaps in a state of remission on the night of the slaying.

3. Was the evidence of insanity of such probative force that a verdict of acquittal should have been granted?

We held in *Edwards v. Commonwealth*, Ky., 554 S.W.2d 380 (1977) that introduction of proof of insanity does not place a burden on the Commonwealth to prove a defendant sane. The introduction of such evidence merely entitles the defendant to an instruction on the issue and leaves the persuasiveness of the proof to the jury's determination. Where there is any evidence indicative of sanity, a jury issue is presented. *See Wiseman v. Commonwealth*, Ky., 587 S.W.2d 235, 237 (1979). Dr. Ravani certainly presented some evidence of sanity when he testified on cross examination that appellant's flight from the scene of the crime and his denial that he knew the victim could indicate that he understood right from wrong and appreciated the criminality of his act. However strong the evidence of his insanity may be, we cannot say that the jury was unreasonable in finding him guilty of murder. *See Wiseman, supra,* and *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977).

The judgment of the Jefferson Circuit Court is reversed with directions for a new trial.

All concur, except CLAYTON, J., dissents.